IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-101-FL

| | |
|---|---|
| ANDORA TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| FEDERAL EXPRESS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (DE 36). Pro se plaintiff did not respond to defendant's motion, and the time to do so has expired. For the following reasons, the motion is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this action in Superior Court of Wake County on February 5, 2019, alleging that defendant discriminated against her in her employment on the basis of her race, sex, and disability and in retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., ("ADA"). Plaintiff asserts discrimination in the form of a hostile work environment and wrongful termination. Plaintiff also asserts state law causes of action of intentional infliction of emotional distress, negligent infliction of emotional distress, negligent supervision, and breach of contract. Plaintiff seeks lost wages, lost benefits, back pay, other economic losses, compensatory and punitive damages, and attorneys' fees and costs.

Defendant removed the instant action to this court on March 13, 2019, invoking the court's subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. Defendant answered plaintiff's complaint the next day, and soon after, a period of discovery followed.

After the close of discovery, defendant filed the instant motion for summary judgment along with a statement of materials facts, and an appendix containing the following materials and categories of materials: 1) excerpts of plaintiff's deposition; 2) letters memorializing offers of employment to plaintiff; 3) acknowledgments of certain documents and training by plaintiff; 4) inter-office communications, memoranda, and policies; 5) a notice to plaintiff of non-eligibility for Family and Medical Leave Act ("FMLA") leave; 6) communications with plaintiff and related documents regarding disciplinary actions and corrections; 7) a letter terminating plaintiff's employment; 8) documents related to plaintiff's internal appeal of that termination; and 9) plaintiff's charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC").

Two days after defendant's filing, the court provided plaintiff notice of defendant's motion for summary judgment and provided plaintiff with instructions regarding how to respond to the motion, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The notice informed plaintiff that she:

> must respond to the motion with affidavits (written statements signed before a notary public and under oath), declarations (written statements bearing a certificate that the statement is signed under penalty of perjury), deposition transcripts, discovery responses, sworn statements (bearing a certificate that the statement is signed under penalty of perjury), or other evidence in such a manner so as to persuade the court that a genuine issue of material fact remains to be determined, and that the case should proceed to trial or evidentiary hearing.

(Roseboro Letter (DE 40) at 1-2). The notice further informed plaintiff of the requirement for an "Opposing Statement of Facts," including the following information and warning:

Under Local Civil Rule 56.1(a)(2), you MUST file a separate statement with numbered paragraphs responding to each paragraph in the defendant's statement of facts. Note that if you fail to respond to any numbered paragraph in the defendant's statement of facts, the facts in that paragraph will be deemed to be admitted.

(Id. at 2). As noted above, plaintiff did not respond to the motion.

## STATEMENT OF FACTS

The undisputed facts may be summarized as follows.[1]

Plaintiff initially was hired in January 2015 by defendant as a "part-time material handler." (Def.'s Stmt. (DE 38) ¶ 2). In May 2016, plaintiff accepted a position as a "part-time courier," which ultimately transitioned into a full-time position. (Id. ¶ 3). As a courier, plaintiff was required, inter alia, to "complet[e] pre-trip inspections" of her delivery vehicle, to "immediately report[] . . . any vehicle accidents and occurrences," and to "not exceed[] her 'Hours of Service.'" (Id. ¶ 15).

In February 2017, plaintiff lost her identification badge, which resulted in a warning letter (a "formal notification of deficiency"), on February 16, 2017, for "failing to secure FedEx Property," a policy violation. (Id. ¶¶ 27-28). During the same time period, running between December 2016 and late February 2017,[2] plaintiff violated defendant's break policy three times, resulting in a performance reminder letter (another "formal notification of deficiency"), which also required her to either resign or promise to improve her performance by formal agreement. (See id. ¶¶ 30-33). Plaintiff provided an agreement promising to improve and acknowledging the relevant policies. Finally, on September 25 and 26 of 2017, plaintiff violated defendant's "Hours of

---

[1] Because plaintiff failed to respond to defendant's statement of materials facts, the facts asserted therein are deemed admitted, per Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1(a)(2) and as noted in the court's Roseboro letter to plaintiff (Roseboro Letter (DE 40) at 2).

[2] Shortly after, in March 2017, plaintiff injured her back at work and attempted to take FMLA leave, which was denied because she did not meet the FMLA's requirement of at least "1,250 hours worked." (Def.'s Stmt. (DE 38) ¶ 74). See generally 29 U.S.C. § 2611(2)(a)(ii).

3

Service" policy by failing to clock out correctly, which resulted in a third warning letter on October 31, 2017. (Id. ¶ 37).

Because plaintiff had received three formal notifications of deficiency or disciplinary letters within a 12-month period, per defendant's policy, she was eligible for termination. (See id. ¶ 38). However, defendant did not terminate plaintiff's employment, allowing her to continue working by exercising an exception to the termination policy on the rationale that plaintiff merited "additional opportunity to address her behavior and other quality performance deficiencies." (Id. ¶ 39; Nov. 1, 2017, Inter-Office Mem. (DE 39-23) at 2). Plaintiff appealed the receipt of the third warning letter through defendant's internal disciplinary appeal system, and the decision to issue the letter was upheld. (Def.'s Stmt. (DE 38) ¶ 45; see also id. ¶ 14 (summarizing defendant's "Guaranteed Fair Treatment Procedure")).

On November 8 and November 10, 2017, plaintiff drove a vehicle that was later determined to be damaged, a fact which she failed to reveal or potentially even realize because she did not complete the required pre- and post-trip inspection of the vehicle. On November 28, 2017, plaintiff was suspended with pay while this incident was investigated. Defendant determined that plaintiff was at-fault and terminated her employment by November 29, 2017, letter. Plaintiff appealed this decision through all the stages of defendant's internal review process, during which, at each stage, the termination decision was upheld, culminating in a final affirmance on January 29, 2018.

On May 14, 2018, plaintiff filed a charge of discrimination with the EEOC, asserting that she had be discriminated against on the basis of her race and disability and in retaliation for making a complaint. (Def.'s Stmt. (DE 38) ¶ 1; Pl.'s EEOC Charge (DE 39-38) at 2-4).

4

# COURT'S DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

   1.  Title VII

As a preliminary matter, although plaintiff asserts a claim of discrimination on the basis of her gender, (Compl. (DE 1-1) at 14), she did not raise such as a basis of discrimination in her charge to the EEOC, (see Pl.'s EEOC Charge (DE 39-38) at 2-4), and thus she cannot raise such a claim in litigation for which she failed to exhaust her administrative remedies. Sydnor v. Fairfax County, 681 F.3d 591, 593 (4th Cir. 2012).

As to plaintiff's claim of wrongful termination on the basis of her race, such a claim, too, fails as a matter of law. Without direct evidence of discrimination on the record, see Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) (en banc), plaintiff must demonstrate a prima facie case of discrimination under a pretext framework. See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002). The elements of a prima facie case "of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment

6

action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012).

Here, the undisputed facts do not demonstrate plaintiff's satisfactory job performance and, in fact, evidence that she had received four disciplinary letters at the time of her firing for failing to meet the requirements of her position. Accordingly, she fails to make out a prima facie case of race discrimination under Title VII, meaning such a claim fails as a matter of law.

2. ADA

The ADA's strictures may be violated both by "disability discrimination" and by "failure to provide a reasonable accommodation." Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 572, 579 (4th Cir. 2015). "To establish a claim for disability discrimination under the ADA, a plaintiff must prove (1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that her employer discharged her (or took other adverse employment action) because of her disability." Id. at 572.[3]

> [I]n order for a plaintiff to establish a prima facie case against his employer for failure to accommodate under the ADA, the plaintiff must show: (1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position and (4) that the employer refused to make such accommodations.

Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013).

Here, on the undisputed facts, plaintiff's claims under either theory fail. First, as already noted, she was discharged because of unsatisfactory work performance not because of any disability, assuming that she had even demonstrated such within the meaning of the ADA. See 29 C.F.R. § 825.702(b) ("ADA's 'disability' and FMLA's 'serious health condition' are different

---

[3] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

7

concepts, and must be analyzed separately."). Accordingly, she has not made out a prima facie case of disability discrimination. Second, on the undisputed facts, plaintiff did not request any accommodation for a disability, as defined by the ADA, meaning any claim for failure to accommodate must fail. Parkinson v. Anne Arundel Med. Ctr., 79 F. App'x 602, 604 (4th Cir. 2003); see Jacobs, 780 F.3d at 580.

    3.    Retaliation

Both the ADA and Title VII prohibit adverse employment action retaliating against employees for engaging in protected activity. See Jacobs, 780 F.3d at 577; Coleman, 626 F.3d at 190. Under either statutory scheme, the prima facie elements of a retaliation claim are 1) engagement in a protected activity; 2) adverse employment action; and 3) a causal link between the two. See Jacobs, 780 F.3d at 577 (explaining that, under the ADA, plaintiff "must show (i) that she engaged in protected activity and, (ii) because of this, (iii) her employer took an adverse employment action against her"); Coleman, 626 F.3d at 190 ("The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action.").

Here, on the undisputed facts, plaintiff did not engage in any activity protected by either statute and, moreover, the adverse employment action against her was on the basis of her unsatisfactory work performance. Therefore, her retaliation claims fail as a matter of law.

    4.    Hostile Work Environment

Similarly, claims of a hostile work environment under either the ADA or Title VII are analyzed under a "parallel . . . methodology." Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001). A plaintiff asserting a hostile work environment must establish that 1) she belongs to

a protected class; 2) she was subjected to unwelcome harassment; 3) the harassment was based on the protected characteristic; 4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and 5) there exists a basis to impute liability for that harassment to the employer. See Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011); Fox, 247 F.3d at 177 (4th Cir. 2001). Here, the undisputed facts do not evidence any harassment rising to a sufficiently severe or pervasive nature as to have changed plaintiff's conditions of employment. Therefore, her claim of a hostile work environment fails as a matter of law.

    5.      State Law Claims

Finally, defendant is entitled to judgment as a matter of law on each of plaintiff's state law claims.

First, as to plaintiff's breach of contract claim, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of the contract." Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260, 276 (2019). However, under North Carolina law, "employment is generally presumed to be 'at-will' in the absence of a contract establishing a definite employment duration," Jackson v. Long, 102 F.3d 722, 728 (4th Cir. 1996), and "an employee without a definite term of employment is an employee at will and may be discharged without reason." Coman v. Thomas Mfg. Co., 325 N.C. 172, 175 (1989).

Here, the undisputed facts establish that plaintiff's employment did not have a definite employment duration and was, instead, at-will, a fact oft-noted in materials read and signed by plaintiff. Therefore, it would not have been a breach of plaintiff's employment contract to terminate her without reason, let alone for her unsatisfactory work performance as was done here.

Plaintiff's claims for infliction of emotional distress, both negligent and intentional, also fail as a matter of law. Under state law, a claim of intentional infliction of emotional distress

9

requires a showing of "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." Waddle v. Sparks, 331 N.C. 73, 82 (1992). On the other hand, negligent infliction of emotional distress requires "that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304 (1990).

Here, under either theory, the undisputed facts do not reveal the requisite severe emotional distress on plaintiff's part. See, e.g., Johnson, 327 N.C. at 304 ("[T]he term 'severe emotional distress' means any . . . severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so."). Lacking an evidentiary basis for an essential element of each cause of action, plaintiff's claims of tortious infliction of emotional distress fail as a matter of law.

Finally, the record reveals no support for plaintiff's claim of negligent supervision. A claim of negligent supervision requires "pro[of] that the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 495 (1986); see Medlin v. Bass, 327 N.C. 587, 590-91 (1990). Here, there is no factual basis for a jury to find that any employee of defendant's committed a tortious act resulting in injury to plaintiff, meaning summary judgment in favor of defendant on plaintiff's claim for negligent supervision is appropriate.

In sum, defendant has shown that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law on all of plaintiff's claims.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 36) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 16th day of December, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge